Bennie D. WYATT and Beverly Wyatt, Plaintiffs-Respondents,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellant.

No. 9540.

Missouri Court of Appeals, Springfield District.

Sept. 19, 1974.

Rehearing Denied Oct. 10, 1974.

Arch M. Skelton, Skelton & Forehand, Springfield, for plaintiffs-respondents.

Jack C. Lorenz, James A. Daugherty, James S. Golden, Kansas City, Glenn A. Burkart, Mann, Walter, Burkart & Weathers, Springfield, for defendant-appellant.

TITUS, Judge.

As Bennie Wyatt was traversing defendant's sidewalk he allegedly stumbled and fell thereby, so it was averred, aggravating and activating preexisting disabilities in his back, legs and body as a whole. Beverly, his wife, joined in suing defendant with a derivative claim for loss of consortium. Defendant denied the occurrence, denied the existence of any sidewalk defect, denied that plaintiffs, or either of them, had been damaged, and affirmatively pleaded that Bennie's fall, if so, resulted in his contributory negligence in failing to keep a lookout. The jury returned unanimous verdicts in defendant's favor. Thereafter the Circuit Court of Greene County sustained plaintiffs' motion for a new trial because "the Court erred in giving instructions numbered 6 and 8 which unduly emphasized the issue of negligence in said converse instructions and that defendant was entitled to only one converse instruction on liability, and that prejudice resulted to plaintiffs as the result thereof." Defendant appealed from the order granting the new trial. § 512.020 RSMo 1969, V.A.M.S.

First we address ourselves to defendant's contention that instruction error, if any, is moot upon appeal because Bennie, "as a matter of law, failed to exercise ordinary care for his own safety." On July 2, 1971, a clear, sunny day, Bennie was employed as a taxi driver in Springfield. Near 9 a.m. he was dispatched to defendant's offices on St. Louis Street to secure and deliver to defendant's building on South Fremont Street a 12″ x 14″ brown envelope. Defendant's building on Fremont is situate on the east side of the north-south public way and is accessible to motor traffic by an east-west driveway leading eastward from the street. Extending north from the driveway and running along the west side of defendant's building is a sidewalk, six feet in width, which leads to the front or west entrance into defendant's building. About thirteen feet north of the extreme south end of the sidewalk, there was an expansion joint which divided the southern section of the sidewalk from what the witnesses referred to as the "vestibule slab" located across and in front of the entrance into the Fremont building. One of defendant's employees testified that an unevenness had existed in the sidewalk at the expansion joint for some four months before July 2, 1971, and that on the date of the casualty the east side of the south end of the vestibule slab was raised "about three quarters of an inch" above the slab immediately adjacent to and south of the joint. This witness further said that where the two slabs joined on the west side of the sidewalk the slabs were even. Relative to

the difference of the two slabs, Bennie stated: "I'd say two inches, I guess it would be that."

Bennie arrived at the Fremont Street building at 9 or 9:15 a. m., parked in the driveway, alighted from the taxi, and walked northward towards and onto the sidewalk carrying the brown envelope in his left hand down by his side. Defendant's building cast a morning shadow across the sidewalk. Bennie had delivered packages at the Fremont Street building on previous occasions. Sometimes he used the rear entrance, sometimes he entered by the front door but had never observed a defect in the sidewalk before he fell. As Bennie approached and entered upon the southern section of the sidewalk there was nothing, so he said, to block his view ahead and he saw nothing wrong with defendant's walkway. "Right about where I fell," Bennie testified, he raised the envelope "to see the room number" on it. This act momentarily obstructed his view of the sidewalk below, and as he was looking at the envelope his right foot caught the up-raised edge of the vestibule slab causing him to stumble and fall.

"In determining the question of whether plaintiff was contributorily negligent as a matter of law, we bear in mind that plaintiff's negligence is a jury question, unless it may be said from all the evidence, viewed in the light most favorable to plaintiff, that it appears so convincingly that no reasonable and disinterested minds can rightfully disagree that plaintiff failed to exercise due care for his own safety and was negligent, and that his negligence was a proximate cause of his injury." Dalby v. Hercules, Inc., 458 S.W.2d 274, 277–278[1] (Mo.1970). In deciding that question, each case must be determined in view of its own particular circumstances and facts. Moore v. Eden, 405 S.W.2d 910, 916[7] (Mo. 1966).

We shall not engage in the unrewarding practice of discussing and distinguishing in detail the many cases cited by the parties. It is sufficient to say that none contain facts exactly similar to those in the instant case, although the well known and basic principles applicable herein may be found in the authorities to which we are referred. It is well to note that defendant does not say that no submissible case was made by plaintiffs and limits its charge of contributory negligence as a matter of law to the fact that Bennie was looking at the envelope, rather than at the sidewalk, when he fell.

■ Viewed in the light most favorable to plaintiffs, the evidence reveals there was a defect in the sidewalk concerning which Bennie was unaware until after he had stumbled and fallen. That the defect in some degree or another had been known to exist for about four months prior to the accident, takes care of all questions of notice to the defendant. Nevertheless, the size and nature of the defect as described in the testimony renders it unreasonable for us to say that it was so obvious that defendant could safely assume that an invitee would discover it and realize the danger or that an invitee, in approaching the defect and looking at the sidewalk in a fashion observed by an ordinarily reasonable person, would anticipate danger. Bennie's testimony was to the effect that he knew of no danger, and anticipated none. "Under these circumstances, he was not required to look down at his feet or the pavement at every step, or to survey the pavement with a 'critical eye,' or walk with his eyes 'glued upon' the pavement." Cunningham v. Bellerive Hotel, Inc., 490 S.W. 2d 104, 108[7] (Mo.1973). To hold that Bennie was contributorily negligent as a matter of law for looking briefly at the envelope as he was walking along the sidewalk, would render every male likewise negligent as a matter of law for glancing at his watch, lifting his eyes to greet a friend, diverting his gaze to a window display, seeking the source of an unexpected noise, or quickly diverting his attention from an intended path to appraise the merits vel non of a feminine stride unexpec-

tantly laid bare by an appreciated gust of wind. The question of whether Bennie, under the evidence and reasonable inferences to be drawn therefrom, was guilty of negligence is one about which reasonable minds may well differ. Therefore, we may not hold Bennie guilty of contributory negligence as a matter of law.

■ In addition to the above, defendant here asserts it was not error to give instructions numbered 6 and 8 "because neither unduly emphasized the issue of negligence, nor emphasized that issue at all," but even if such be error, granting a new trial was not authorized in that giving instructions 6 and 8 "was invited error, because of the joint requests and tenders by both [plaintiffs] of given Instructions 5 and 7, in that neither [plaintiff] had a right to have both such instructions given."

In form substantially prescribed by MAI 22.04, Instruction No. 5 charged the jury: "Your verdict must be for Plaintiff Bennie D. Wyatt if you believe: FIRST, there was a defect in the sidewalk and as a result the sidewalk was not reasonably safe for the public, and SECOND, Defendant knew or by using ordinary care should have known of the existence of this condition, and THIRD, Defendant failed to use ordinary care to remedy it, and FOURTH, as a direct result of such failure Plaintiff Bennie D. Wyatt was injured, . . . ." Instruction No. 7, directing that "Your verdict must be for Plaintiff Beverly Wyatt" was in the same words as Instruction No. 5 except in the concluding numbered paragraph (MAI 31.04–B) it stated: "and FOURTH, as a direct result of such failure Plaintiff Bennie D. Wyatt was injured and as a result of such injury Plaintiff Beverly Wyatt sustained damage, . . . ." Instructions No. 6 and 8 were two identical converse instructions given at defendant's request. They charged (with the bracketed phrases indicating the only differences): "Your verdict must be for defendant on plaintiff Bennie D. Wyatt's [Beverly Wyatt's] claim if you do not believe each proposition submitted to you in Instruction No. 5 [No. 7]." MAI 33.13 (Modified).

Defendant's contention that even if giving instructions 6 and 8 was error, it "was invited error, because . . . neither [plaintiff] had a right to have both [Instruction No. 5 and Instruction No. 7] given," is not sustainable. A married man who sustains injuries through negligence of another has an independent, separate and distinct cause of action for his injuries, disabilities and expenses; his wife may also have (but not necessarily) a separate, distinct and independent cause of action for the loss of her husband's services, companionship and society. Robben v. Peters, 427 S.W.2d 753, 756–757[4] (Mo.App.1968). Therefore, as the husband's damage submission differed from that of the wife and because the issue of the resulting damage to each must be clearly distinguished, each plaintiff was properly entitled to separate verdict directing instructions although they largely duplicated one another. Watterson v. Portas, 466 S.W.2d 129, 131 (Mo.App. 1971); Illustration MAI 35.05, instructions numbered 2 and 3; Illustration MAI 35.06, instructions numbered 3 and 5; Committee's Comment to MAI 35.05, p. 405.

■ It oversimplifies the mandate of MAI to merely state that it is error to give more than one converse instruction on defendant's behalf. A conning of the cases and directions for use of MAI as regards this matter, discloses that this broad statement is confined to instructions which converse plaintiffs' *theory of recovery*. Thus, when multiple parties submit the same theory of recovery in separate instructions, it is error to give more than one instruction conversing that theory. For example: Son and parents, as plaintiffs, were permitted separate instructions in Murphy v. Land, 420 S.W.2d 505 (Mo.1967), submitting identical theories of recovery under the humanitarian doctrine for defendant's failure to slacken speed and swerve. It was held error for the court to give converse instructions MAI 29.06(6) [now MAI 33.06(6)] and MAI 29.04(1) [now MAI 33.-

03(2)] at defendant's request because these only undertook to be converse charges relating to defendant's negligence. The same was true in Scheele v. American Bakeries Company, 427 S.W.2d 361 (Mo. 1968), and Watterson v. Portas, supra, 466 S.W.2d 129, where defendant's multiple instructions directed to the separate instructions of the spouse and dependent, were designed to state conversely the plaintiffs' theory of defendant's negligence or failure to exercise ordinary care.

■ The rules prohibiting the use of two converse instructions directed at multiple verdict-directors do *not* apply where multiple parties relying on the same theory of recovery have damage submissions which differ. In MAI 1973 Pocket Part, MAI 33.02, p. 107, MAI 33.03, p. 108, and MAI 33.04, p. 109, it is stated: "Notes on Use (Supplemental)—Case law has refined the rules regarding the use of converse instructions with multiple verdict-directing instructions. *The concluding paragraph of Notes on Use is withdrawn and amended to read:* . . . When multiple parties submit the same theory of recovery . . . but an additional element of proof is necessary to establish such recovery . . . by one or more of such parties, then an additional converse instruction may be submitted to meet such additional element of proof. Thus if husband and wife join in an action for injury to the husband and consequent loss of consortium to the wife and each submit in separate instructions the same theory of recovery and the verdict directing instruction for the wife includes an additional finding of damage to her, then the defendant or defendants may submit an additional converse to meet the issue of the wife's claim of damage."

If the last portion of the quotation from MAI 1973 Pocket Part, supra, was not always so under MAI, it should have been according to Illustration MAI 35.06, pp. 408–413. The illustrated situation (MAI 35.06) involves a claim by the husband for injuries and a claim for loss of consortium by the wife. In the illustration, as here,

defendant, among other things, asserted the husband's injuries were sustained before the accident and that the wife had suffered no damages. The husband and wife, in separate verdict directing instructions, relied on the same theory of recovery but, as is necessary and required (MAI 31.04), the wife's instruction included an additional finding of damage to her. Illustration MAI 35.06 permitted defendant two converse instructions, i. e., "Instruction No. 4 (MAI 33.02(1) Modified)—Your verdict must be for defendant on plaintiff [husband's] claim for damages if you do not believe defendant violated the traffic signal or that plaintiff [husband] sustained damage as a direct result of defendant's negligence," and "Instruction No. 6 (MAI 33.03(3) Modified)—Your verdict must be for defendant on plaintiff [wife's] claim unless you believe she sustained damage as a direct result of injuries sustained by [husband as submitted in plaintiff wife's verdict directing instruction]."

A pronouncement, however, that two converse instructions were properly available to defendant in this instance, is not wholly accurate without inclusion of the specific kinds of instructions permissible. Notes on Use (Supplemental), MAI 1973 Pocket Part, at pp. 107–109, supra, do not change the rule that limits a defendant to a single converse of multiple directing instructions which, except for designation of the particular plaintiff, are replicas and submit the same theory of recovery, as in a claim for loss of consortium. Brown v. Jones Store, 493 S.W.2d 39, 42 (Mo.App. 1973). The supplemental notes on use and MAI 35.06 attest that the only additional converse allowable· to defendant must be directed and limited to what is necessary to meet the plaintiff wife's claim for derivative damage. "[T]he strict adherence to M.A.I. so often and forcefully reiterated by the Supreme Court, has developed the equally forcible admonition that the 'Notes on Use' thereof must be religiously followed." Royal Indemnity Company v. Schneider, 485 S.W.2d 452, 458[4] (Mo. App.1972).

Defendant's two converse instructions were cut from the pattern set forth in MAI 33.13, and the Notes on Use applicable thereto state that such an "instruction converses every element in plaintiff's case." This being so, the defendant had two instructions conversing plaintiffs' theory of recovery, which was error. In an oblique move to avoid the effect of this error defendant resorts to a hyperbolic interpretation of the reason given by the court nisi in granting the new trial. Defendant argues that since plaintiffs' verdict directing instructions were predicated upon defendant's averred "failure to use ordinary care," the giving of instructions 6 and 8 for defendant could not have "unduly emphasized the issue of negligence," as stated by the trial court, because the word "negligence" was not employed in the verdict directors or in the two converse instructions which were given. To aid this argument defendant relies on Epps v. Ragsdale, 429 S.W.2d 798, 801[7] (Mo. App.1968), and similar opinions which hold it error to give an instruction defining ordinary care when all the other charges hypothesized negligence. Use of "negligence" in verdict directors with naught but a definition of "ordinary care" understandably would spawn confusion in the minds of laymen jurors, but the trial court's reference to "negligence" in its order was not for the jury's eye; rather, it was for the eyes of those who should readily recognize the meaning of the court's pronouncement and intent.

The order granting a new trial is affirmed and the cause is remanded.

HOGAN, C. J., BILLINGS, J., and FRANK CONLEY, Special Judge, concur.

STONE, J., not sitting.

FLANIGAN, J., not participating, because not a member of the Court when this cause was submitted.