Opal CRAGIN and Harold Cragin,
Plaintiffs-Respondents,

v.

Ellen LOBBEY, Defendant-Appellant,

and

Alvin Hinkle, Defendant-Appellant.

Nos. 9887, 9888.

Missouri Court of Appeals,
Springfield District.

May 6, 1976.

Rehearing Denied May 27, 1976.

Ross T. Roberts, Roberts & Fleischaker, Joplin, for plaintiffs-respondents.

John R. Martin, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendant-appellant Ellen Lobbey.

Ralph E. Baird, Joplin, for defendant-appellant Alvin Hinkle.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Plaintiffs, husband and wife, were passengers in an automobile operated by defendant Hinkle when it figured in a collision with a vehicle driven by defendant Lobbey. Plaintiff wife sued defendants for damages allegedly caused by injuries received in the accident; plaintiff husband joined in suing defendants on his averred action per quod consortium amisit. The jury returned verdicts in favor of both defendants. Plaintiffs filed separate motions for new trials. Although blessed with a verdict in his favor and apparently relying on Rule 72.01(b),[1] defendant Hinkle separately moved "to have judgment entered in accordance with his motion for a directed verdict." The court nisi overruled defendant Hinkle's motion and sustained "Plaintiffs' motion [sic] for a New Trial [because] there was an error in giving Instructions 7 and 9, and for the further reason that the verdict is against the weight of credible evidence."

■ First, to winnow the chaff. Defendant Hinkle's notice of appeal recites that he "appeals from the order overruling [his] separate motion . . . to have judgment entered in accordance with his motion for a Directed Verdict and sustaining Plaintiff Opal Cragin's Motion for New Trial." We make no determination of the propriety vel non of defendant Hinkle's after-trial motion under the circumstances existing when it was filed. It suffices to observe again that "The right of appeal shall be as provided by law" (Rule 81.01), and if an appeal is not authorized by statute we must, ex mero motu, notice this court's lack of appellate jurisdiction in the cause. That part of Hinkle's notice appealing from the order overruling his motion for judgment in conformity with his motion for directed verdict is a nullity because an appeal from such an order is not authorized by § 512.020. It does not constitute "any final judgment in the case or . . . any special order after final judgment"

within the meaning of the statute. *Powell v. Watson*, 516 S.W.2d 51, 52[1–3] (Mo.App. 1974). This being so, the points relied on by defendant Hinkle in his brief on appeal which complain of the trial court's ruling on his after-trial motion need not and shall not be considered.

■ What of the second part of Hinkle's notice of appeal? A negligently inflicted injury to a wife gives rise to two distinct, separate and independent causes of action—one in favor of the wife for damages because of her injuries and another in favor of the husband for damages sustained on account of the loss of his wife's companionship, society and services. The causes of action are separate and each is an entirety unto itself. *Rea v. Feeback*, 244 S.W.2d 1017, 1019 (Mo.1952). And while Rule 66.-01(c) requires the two causes of action to be filed jointly [*Shepherd v. Consumers Cooperative Association*, 384 S.W.2d 635, 641 (Mo. banc 1964)], the rights of action are not merged into one but remain separate and distinct. *Robben v. Peters*, 427 S.W.2d 753, 757[5] (Mo.App.1968); 1 C.J.S. Actions § 113a.(5), at p. 1376. Unlike the parties to these appeals, who stand mute on the subject, the wary reader will have observed that defendant Hinkle appealed only from the order granting plaintiff wife a new trial. He did not, and indeed now cannot, appeal from the order which granted plaintiff husband a new trial on his separate and distinct cause of action. Where only a part of a separable judgment or order is appealed from, the remainder is unaffected and is not brought into the appellate court. *Anthony v. Morrow*, 306 S.W.2d 581, 583[3] (Mo.App.1957); *Grignon v. Wechselberger*, 70 Wash.2d 99, 422 P.2d 25, 26[1] (1966); *Territory of Hawaii by Choy v. Damon*, 44 Haw. 557, 356 P.2d 386, 390[6] (1960), cert. denied, 368 U.S. 838, 82 S.Ct. 40, 7 L.Ed.2d 38; 4A C.J.S. Appeal and Error § 608, p. 399. Therefore, defendant Hinkle's failure to appeal from the order granting plaintiff husband a new trial on his separate cause of

---

1. References to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and to RSMo 1969, V.A.M.S.

action leaves that portion of the husband's action in the trial court and out of our hands.

■ To complete the task of chaff riddance, one of defendant Hinkle's points on appeal attacks the claimed error of the trial court in overruling his motion for directed verdict at the close of plaintiffs' evidence. In so doing, defendant Hinkle overlooks the fact that he waived his right to complain of any such error by introducing evidence of his own after denial of the motion. *Daniels v. Smith*, 323 S.W.2d 705, 706[1] (Mo.1959); *Pasley v. Newton*, 455 S.W.2d 43, 46–47[2] (Mo.App.1970); *Hoevelman v. Reorganized Sch. D. R2 of Crawford County*, 452 S.W.2d 298, 300[2] (Mo.App.1970); *Jacobs v. Frangos*, 329 S.W.2d 262, 264[1] (Mo.App.1959).

Four verdict-directing instructions were given for plaintiffs. No. 2 for plaintiff wife and No. 6 for plaintiff husband called for verdicts for the respective plaintiffs against defendant Lobbey if the jury believed that "defendant Lobbey either: failed to keep a careful lookout, or drove at an excessive speed." Instructions No. 4 and No. 8 respectively directed verdicts for plaintiff wife and plaintiff husband "against defendant Hinkle if you believe: First, defendant Hinkle failed to keep a careful lookout." Four converse instructions followed the verdict-directing charges. Each pair was identical, with the bracketed words indicating the only difference. Instructions numbered 3 and 7 for defendant Lobbey: "Your verdict must be for defendant Ellen Lobbey on plaintiff Opal Cragin's [Harold Cragin's] claim unless you believe that defendant Ellen Lobbey was negligent as submitted in Instruction No. 2[6] and that plaintiff Opal Cragin [Harold Cragin] sustained damage as a direct result thereof." For defendant Hinkle, instructions numbered 5 and 9: "Your verdict must be for defendant Hinkle on plaintiff Opal Cragin's [Harold Cragin's] claim for damages unless you believe that defendant Hinkle was negligent [and that, Plaintiff Harold Cragin sustained damages as a direct result thereof]."

■ The foregoing discloses that instructions 3 and 7 given for defendant Lobbey and instructions 5 and 9 given for defendant Hinkle constituted the giving of two converse instructions on behalf of each defendant which conversed every element of plaintiffs' theory of recovery. This was error, as correctly recognized by the trial court, for the only additional converse instructions properly allowable to the defendants should have been limited and directed to those items necessary to meet the plaintiff husband's separate claims for derivative damages. *Wyatt v. Southwestern Bell Telephone Company*, 514 S.W.2d 366, 370–371[4, 5] (Mo.App.1974).

■ Defendants do not contest the ruling as to instruction error. Rather they claim, in effect, that any error which may have occurred in charging the jury was of no consequence because the trial court erred in overruling their motions for directed verdict at the close of all the evidence, as the plaintiffs made no submissible case. *Bohler v. National Food Stores, Inc.*, 425 S.W.2d 956, 959 (Mo.1968). Where, as here, the trial court sets aside the verdicts and judgment for defendants and grants plaintiffs a new trial on the ground the verdicts were against the weight of the credible evidence, we need to examine the record to ascertain if there was substantial evidence to support verdicts for the plaintiffs. If not, we may hold the order of the trial court to be an abuse of discretion. *Cunningham v. Bellerive Hotel, Inc.*, 490 S.W.2d 104, 107[1] (Mo. 1973).

The casualty occurred on commencement day at Missouri Southern State College in Joplin at the intersection of north-south four-laned Range Line Road (U.S. Highway 71) and east-west two-laned Newman Road. Traffic at the intersection was usually controlled by an overhead electrically operated signal which, at the time of the collision, flashed "red" or "stop" for Newman Road traffic and "yellow" or "caution" for vehicles traveling Range Line. § 304.301. Defendant Hinkle was driving west on Newman Road and crossing the intersection when the front of defendant Lobbey's auto-

mobile, then being operated south in the west or outside lane for southbound traffic on Range Line, struck "the right rear fender" of the Hinkle car "right over the wheel."

Plaintiffs had attended the afternoon commencement exercises in the company of defendant Hinkle et uxor and a visiting Floridian. At the conclusion of the college festivities, plaintiffs et alii repaired to the Hinkle car. Plaintiffs and Mrs. Hinkle were seated on the rear seat; defendant Hinkle (the driver) and the visitor occupied the front seat. The vehicle departed the college grounds as part of a steady stream of westbound traffic traveling Newman Road enroute to the intersection in question. Those in the back of the Hinkle car busied themselves looking at snapshots supplied by the front seat passenger. Because of her preoccupation with the photographs, plaintiff wife did not know the speed of either of the involved vehicles, where in the intersection the accident occurred, whether or not the Hinkle car stopped before entering the intersection, or what the other westbound traffic was doing when it reached the intersection. Plaintiff wife first said she had not seen the Lobbey automobile until "seconds before the impact," but amended this on cross-examination to "just a fraction of a second before the impact;" she did not undertake to describe the location of the two vehicles at that time. She recounted having seen "a traffic officer in the center of the intersection." However, she did not know where either vehicle was when she made this sighting. Neither did she know the location of the officer at the time of the accident. For reasons of no moment here, none of the other occupants of the Hinkle car testified at the trial.

For approximately one-fourth mile before reaching the intersection, defendant Lobbey was traveling south and downgrade. She could see a steady stream of traffic coming off Newman Road at the east side of the intersection. All such traffic, she recalled, was turning left or south into the inside southbound lane of Range Line. In por-

tions of her pretrial deposition read to the jury by plaintiffs' counsel, defendant Lobbey agreed "that the first time [the Hinkle] car was called to your attention or you remembered seeing that car was that [when?] it started to pull across Rangeline [sic]." She also deposed that when she first saw the Hinkle car "It seemed it was right in front of me [and] as it started to pull across Rangeline [sic], instead of turning, it came straight across." The impact, so said defendant Lobbey and Officer Love, occurred in the outside or west traffic lane on Range Line. Later testifying in person at the trial, defendant Lobbey stated she was "probably" going about 35 m. p. h. when she started down the hill a quarter of a mile north of the intersection, but that she took her foot off the accelerator which caused the speed of her car to slow gradually. What the speed of the Lobbey car was when it neared the intersection went unexplained. None of the cars entering onto Range Line from the east, according to defendant Lobbey, including the vehicle immediately preceding the Hinkle car, went across the intersection; all turned south into the inside southbound lane on Range Line. Defendant Lobbey said there were no cars ahead of her car that were stopped in the inside southbound lane on Range Line at the north edge of the intersection, and that two southbound automobiles immediately ahead of her in the outside lane proceeded southward through the intersection without stopping. She did not observe a policeman at the intersection until after the collision, and she was "right at the north edge of the intersection" when she first saw the Hinkle car. Upon seeing the Hinkle car, defendant Lobbey "put on my brakes immediately" and the impact occurred "immediately after that." This witness was not asked concerning the speed of the Hinkle car.

Police Officer Love went to the intersection to direct the commencement day traffic. The vehicular exodus from the college had started before he arrived and parked his car on the east berm of Range Line south of Newman Road. Upon arrival, Love went to the "center of the intersection

. . . right under the traffic light" where, by use of hand and arm signals, he stopped traffic on Range Line and then "signaled for traffic coming off of Newman Road to come ahead." Love stated "the cars [coming off Newman Road] that was turning left couldn't seem to get around me" so he moved over "close" to the southeast corner of the intersection. According to the officer, the vehicles entering the intersection from the east "was turning, going south . . . and they were going north and they were going straight." At one time Love said he had been at the intersection "about 10 minutes" before the accident occurred and indicated he had let some Range Line traffic proceed during this interim. However, he later recanted both statements as the subjects were pressed on cross-examination. When the accident occurred, so the officer acknowledged, he was near the southeast corner of the intersection "talking to a man that had a stalled car," although, somewhat contradictorily, the officer asseverated he had signaled the Hinkle car into the intersection when it "was stopped right here, he was the front car." Love had his back to the site of the impact when he "heard the screeching of brakes" and looked around to see the Lobbey automobile "within 8 feet of the north edge of the intersection" and the collision occurred thereafter in "just a fraction of a second." Over the objections of defendant Lobbey that the policeman had not observed the car for a sufficient time and distance to permit him to make an informed estimate of speed, the officer was permitted to testify that "I estimated the speed [of the Lobbey car] at 35 miles per hour." On cross-examination when asked "Did you guess at the speed, Mr. Love?" the officer replied, "It would be a guess, yes, sir." He was then asked "You didn't have any distance that you saw them travel at which you could form any true estimate of speed, did you?" The officer's answer was, "You are right. No, sir." Defendant Lobbey's motion to strike the speed-testimony of Officer Love because it "was merely a guess [and] has no probative value" was refused. The officer "estimated" the speed

of the Hinkle car at twenty miles per hour and described the impact as "very slight."

Defendant Hinkle's evidence consisted of the proof of §§ 35.13 and 35.14 of the Joplin City Code (ordinances), viz., "No person shall wilfully refuse to comply with any lawful sign, signal, order or direction of a police officer," and "The law enforcement officers of the city are hereby empowered to control and direct manually the movements of vehicles and traffic at any and all times."

■ We agree with defendant Lobbey that the trial court erred in permitting the speed-testimony of Officer Love to remain in the record for final consideration in determining the speed of defendant Lobbey's automobile. There is considerable authority that before a witness should be permitted to testify as to the speed of a motor vehicle, he should first demonstrate that he had a reasonable opportunity to judge that speed. 8 Am.Jur.2d, Automobiles and Highway Traffic, § 985, pp. 537–539, and cases there cited. However, and seemingly to the contrary, there are Missouri cases which permit a witness to express an opinion or judgment (as opposed to a guess) as to speed where the opportunity to judge the speed was limited to "only for about $\frac{1}{16}$ or $\frac{1}{18}$ of a second," to a " 'fleeting second before the impact,' " or to " ' . . . a split second or so.' " *Vaeth v. Gegg,* 486 S.W.2d 625, 627[3] (Mo.1972); *Johnson v. Cox,* 262 S.W.2d 13, 15[3, 4] (Mo.1953); *Schneider v. Dannegger,* 435 S.W.2d 413, 415 (Mo.App.1968); *Lafferty v. Wattle,* 349 S.W.2d 519, 527–528 (Mo.App.1961). These authorities opine that the brevity of the observation does not destroy the credibility of the testimony but only goes to its weight and value. On the other hand, a witness who observed a truck moving only six inches in a given direction, should not have been allowed to say that it was moving 10 m. p. h. because such an opinion was bound to have been based on guess, speculation and conjecture and, therefore, was not regarded as substantial evidence. *Prince v. Bennett,* 322 S.W.2d 886, 890–891 (Mo.1959). Divination is not our forte, and we do not

undertake the impossibility of striking a line, either for time or distance, to delineate when an estimate, judgment or opinion as to speed is credible for jury consideration or deteriorates into a mere guess of no probative value. Nevertheless, until it became known that Officer Love's estimate of defendant Lobbey's speed was just a guess, and as long as it appeared the given estimate was an expression of his judgment or opinion, under *Vaeth, Johnson, Schneider,* and *Lafferty,* supra, we cannot say the trial court erred in permitting the testimony albeit the opportunity to judge the speed was limited to "just a fraction of a second." But when Officer Love stated that his estimate "would be a guess, yes, sir," the trial court erred in not striking that testimony as requested.

▇ If, upon consideration of a witness's entire testimony, it is apparent his use of the word "guess" is a colloquial effort to express an opinion or judgment (39 C.J.S. Guess, p. 415), then his employment of that word is not necessarily destructive of his testimony. *Hinrichs v. Young,* 403 S.W.2d 642, 646[5] (Mo.1966). However, if a witness cedes his prior testimony on a given issue was, in fact, predicated on a mere guess, i. e., upon speculation with no factual basis, or if he admits to facts, conditions or circumstances which make it evident the testimony was a mere guess on his part, then his testimony does not constitute substantial evidence and has no probative value. *Zeigenbein v. Thornsberry,* 401 S.W.2d 389, 391[3] (Mo.1966); *Abernathy v. Coca-Cola Bottling Company of Jackson,* 370 S.W.2d 175, 177 (Mo.App.1963); *Denney v. Spot Martin, Inc.,* 328 S.W.2d 399, 405[8] (Mo.App.1959); *Christner v. Chicago, R. I. & P. Ry. Co.,* 228 Mo.App. 220, 228[7], 64 S.W.2d 752, 756[7] (1933); *O'Neil Implement Mfg. Co. v. Gordon,* 269 S.W. 636, 640[6] (Mo.App.1925). What Officer Love said on direct examination regarding his estimate of the speed of defendant Lobbey's car was admitted on cross-examination to have been a mere guess on his part because, as he agreed, he did not have sufficient opportunity to "form any true estimate of the speed." *Van Bibber v. Swift & Co.,* 286

Mo. 317, 337, 228 S.W. 69, 76[9] (banc 1921); *Barnhart v. Ripka,* 297 S.W.2d 787, 791[7] (Mo.App.1956). With the speed-testimony of Officer Love having thus been dispossessed of probative value, the court should have disposed of that issue as if the witness had not spoken. *Oglesby v. Missouri Pac. Ry. Co.,* 177 Mo. 272, 296, 76 S.W. 623, 627–628 (banc 1903).

▇ A submissible case is dependent upon proof of facts. Evidence that has no probative value does not meet that standard. *Madison v. Dodson,* 412 S.W.2d 552, 557[6] (Mo.App.1967). With Officer Love's speed-testimony obliterated from the record, there is absolutely no evidence of the speed of defendant Lobbey's car as it descended the hill or as it neared and entered the intersection. While defendant Lobbey said she "probably" was going 35 m. p. h. when her automobile was at the top of the hill one-fourth mile north of the intersection, she also testified she then removed her foot from the accelerator which cause the speed of the vehicle to slow gradually as it traveled the approximate quarter-mile toward the site of the collision. But how much the car slowed or at what speed it may have been traveling at any given point south of the hillcrest was never revealed. In addition, the evidence was devoid of information as to the length of skid marks, if any, the force of the impact (except that it was "very slight"), the grade of the hill, whether defendant Lobbey's car was equipped with a manual or automatic transmission, or what the deceleration rate of the speed would have been under the conditions present. In fine, there was nothing that would permit determination of the speed of defendant Lobbey's auto at anytime or at any place during its quarter-mile approach, short of speculation and conjecture. Since that speed, whatever it might have been at anytime or distance from the intersection and point of impact, would necessarily be predicated wholly on speculation, a fortiori any conclusion that defendant Lobbey drove at an excessive speed could be reached only through guesswork and conjecture. "Guess, speculation and

conjecture as to speed, distance, position and time do not rise to the dignity of the requisite evidence to support an assignment of negligence." *Hines v. Sweet,* 518 S.W.2d 710, 711[3] (Mo.App.1975). Moreover, excessive speed cannot be the proximate cause of an accident unless it be shown that the casualty would not have occurred except for the excessive speed proved by substantial evidence. *Marshall v. Bobbitt,* 482 S.W.2d 439, 442[1] (Mo.1972). Absent evidence as to the respective location of either involved vehicle (except at and a split second before impact), and sans any proof of probative value as to the speed of the Lobbey automobile at and immediately prior to the accident, there could be no way of saying, without resort to sheer guessing, that the unknown speed of defendant Lobbey's car prevented her from avoiding the collision. Mere speculation or conjecture is not a sufficient basis for holding that alleged excessive speed was the proximate cause of the casualty. *Osborn v. McBride,* 400 S.W.2d 185, 188[3] (Mo.1966). Plaintiffs did not make a submissible case against defendant Lobbey on the charge of excessive speed.

 To make a submissible case on negligent failure to keep a careful lookout, it was not necessary for plaintiffs to produce direct evidence that defendant Hinkle and defendant Lobbey were not looking. *Dorrell v. Moore,* 504 S.W.2d 174, 178[4] (Mo.App.1973). However, before plaintiffs' case on this score could be termed submissible, it was required that they satisfy the burden of proving all facts and circumstances essential to submission of the negligence charged [*Williams v. Boone,* 413 S.W.2d 36, 40[2] (Mo.App.1967)] by adducing substantial evidence from which it could reasonably be found that defendants, in the exercise of the highest degree of care, could have seen the danger sooner than they did [*Levin v. Caldwell,* 285 S.W.2d 655, 659[3] (Mo.1956)] and in time thereafter to take effective precautionary action. *Shelton v. Bruner,* 449 S.W.2d 673, 679 (Mo.App.1969). The ability and means to avoid a danger means more than possessing mechanical means with which to slow, stop or swerve; it also includes the existence of sufficient time and distance to take effective action in avoidance. *Stegall v. Wilson,* 416 S.W.2d 658, 662[3] (Mo.App.1967). And to have a submissible case, more is necessary than a showing of a purely speculative possibility that a collision might have been avoided if a careful lookout had been maintained. *Reed v. Burks,* 393 S.W.2d 377, 380[4] (Mo.App. 1965).

 What has already been said demonstrates the paucity of facts furnished on the issue of lookout. It was not shown where the Lobbey car was or whether there was any vision-interfering traffic or other objects between it and the Hinkle car at the time defendant Hinkle neared, entered and proceeded across the intersection. From defendant Lobbey's point of view, there was a dearth of evidence as to whether or when she could or should have seen the Hinkle car sooner than she did. From the evidence presented, whether defendant Hinkle ever did or did not see the Lobbey automobile, and if so where it was at that time, is left wholly to speculation. The mere happening of the accident did not establish negligent failure to keep a careful lookout on the part of either driver. *Harris v. Lane,* 379 S.W.2d 635, 638–639[6] (Mo. App.1964). Of equal importance is the total absence of evidence showing that when the two defendants saw or first should have seen the other, there then existed sufficient time and distance for either or both of them to take effective action in avoidance. "There is simply a vacuum in the evidence as to when the defendant[s] could or should have seen and what [they] could *thereafter* have done to prevent the collision." *Page v. Baxter,* 503 S.W.2d 32, 34 (Mo.App.1973). Thus, where the defendants' vehicles were actually positioned when the presence or movement of either produced a situation of danger, can only be reckoned through speculation and conjecture. *Powell v. Watson,* 526 S.W.2d 318, 325 (Mo.App.1975); *Harris v. Lane,* supra, 379 S.W.2d at 639[9]. In our view, plaintiffs did not make a submissible case against defendants on their alleged failure to keep a careful lookout.

But for the anomalous situation presented by defendant Hinkle's notice of appeal, we would reverse the order of the trial court outright. Because of the uniqueness of the situation presented, it is ordered:

In Case No. 9888—The trial court's order granting plaintiff Opal Cragin a new trial against defendant Hinkle is reversed and the trial court is directed to reinstate the judgment entered on the verdict in favor of defendant Hinkle and against plaintiff Opal Cragin. The trial court's order granting plaintiff Harold Cragin a new trial against defendant Hinkle, having never been appealed, remains in force.

In Case No. 9887—The trial court's order granting plaintiffs a new trial against defendant Lobbey is reversed and the trial court is directed to reinstate the judgment on the verdicts finding the issues in favor of defendant Lobbey and against both plaintiffs.

All concur.