**Bennie D. WYATT and Beverly Wyatt, Plaintiffs-Respondents,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellant.**

No. 10228.

Missouri Court of Appeals, Springfield District.

Sept. 25, 1978.

Motion of Respondents for Rehearing or in the alternative for Transfer to the Court en banc, or in the alternative for Transfer to the Supreme Court of Missouri Denied and Application for Transfer Denied Oct. 19, 1978.

Application to Transfer Denied Dec. 18, 1978.

Arch M. Skelton, Michael A. Jones, Springfield, for plaintiffs-respondents.

James E. Taylor, J. Curtis Nettels, Kansas City, Glenn A. Burkart, Richard E. Dorr, Mann, Walter, Burkart, Weathers & Warden, Springfield, for defendant-appellant.

Before BILLINGS, C. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Taxi driver Bennie Wyatt was awarded $70,000 damages by a Greene County jury for injuries he received near 9 a. m. July 2, 1972, when he fell on defendant's sidewalk. The jury also awarded Bennie's wife $10,000 for her derivative claim. Defendant has appealed and the interested may read the first appellate installment hereof in *Wyatt v. Southwestern Bell Telephone Company,* 514 S.W.2d 366 (Mo.App.1974).

Defendant's building and premises on South Fremont Avenue in Springfield are situate on the east side of the north-south thoroughfare. A private sidewalk east of the street lies immediately adjacent to the west side of the building and extends from a south parking area northward to west entrances into the structure. The six-foot-wide sidewalk consists of two concrete slabs divided by a narrow asphalt-type-filled expansion joint. The southern slab of the sidewalk is 13 feet long and terminates near the entranceways into the building. Pictorial exhibits show that only 5½ bricks on the west side of the building exist south of the expansion joint. By taking note of the fact that ordinary bricks are 8 inches long (*State v. Perry,* 226 N.C. 530, 39 S.E.2d 460, 464 (1946); 11 C.J.S. Brick, p. 878; Webster's New Collegiate Dictionary, "brick", p. 137), it is calculated that at the time of the fall the north 3 feet 8 inches of the south slab was in shadow, whereas the south 9 feet 4 inches thereof was in bright sunlight as described by Bennie.

On the cloudless morning of the accident, Bennie had been dispatched to obtain a large envelope at defendant's offices on St. Louis Street for delivery to its offices on South Fremont. Upon arrival at the Fremont premises, Bennie departed the taxi with the envelope in his left hand and walked northward on the sidewalk. His path was in the center of the east half so that the right side of his body was "probably six to eight inches" west of the west wall of the building. As Bennie neared the entrances, he lifted "the envelope trying to look at it" to ascertain its delivery point inside the building. At that moment his right foot "hit something real hard" causing him to stumble and fall forward and to his right "up in front of the door."

After falling, Bennie ascertained the accident was produced by the (unmeasured) fact that the east side of the south slab was "around two inches" lower than that of the adjoining slab to the north. A defendant's employee, in charge of maintenance and repairs of defendant's premises, noticed a settling of the south slab about three months prior to Bennie's fall. Without having measured the settling, and without indicating to what part of the sidewalk he referred, defendant's employee opined the difference "was about three quarters of an inch." A photographer who took photographs and made measurements at the scene four months after the fall, said the difference in elevation between the north and south slabs at the east edge of the sidewalk measured 1⁷⁄₁₆ inches and that there was "no differentiation between the [level of] the two" slabs at the west side of the walk. We are aware of the general rule that actual measurements usually control over mere estimates. *Black v. Kansas City Southern Railway Co.,* 436 S.W.2d 19, 28[1€] (Mo. banc 1968); *Luettecke v. City of St. Louis,* 346 Mo. 168, 173[1], 140 S.W.2d 45, 47[1] (1940). Therefore, we proceed upon the assumption the difference was as measured by the photographer.

Defendant's first point relied on, in essence, is that the difference between the two sidewalk slabs was so minimal that it cannot be held to have been negligent as a matter of law.

Plaintiffs and defendant agree that defendant's duty was to maintain its sidewalk in a reasonably safe condition. Because the duty of a municipal corporation

is the same with respect to its public sidewalks [*Hart v. City of Butler,* 393 S.W.2d 568, 582[24] (Mo.1965)], each side herein has cited and relied on reported cases involving city sidewalk litigation. As a result, both have become immersed in the measured sidewalk game wherein the players, as most reported opinions attest, attempt to adjudge liability vel non via level differences calculated in inches and fractions thereof. However, respectable precedent cautions that the questions of negligence in this type of case should not be resolved by the measuring stick but rather upon the rule of actionable negligence, which is generally regarded as being the failure of one, for the protection of another, to observe ordinary care, vigilance and precaution which the circumstances justly demand to the injury and damage of another. *Seitter v. City of St. Joseph,* 358 S.W.2d 263, 268 (Mo.App. 1962); *Butler v. City of University City,* 167 S.W.2d 442, 445–446 (Mo.App.1943); *Lithegner v. City of St. Louis,* 125 S.W.2d 925, 934–935 (Mo.App.1939); 65 C.J.S. Negligence § 1(2), pp. 433–440. Although the degree of care required of a city to keep its sidewalks in a reasonably safe condition is not affected by the quantum of walkways nor the size of the municipality [*Kanter v. Kansas City, Missouri,* 336 S.W.2d 387, 388 (Mo.1960); *Barr v. Kansas City,* 105 Mo. 550, 561, 16 S.W. 483, 486[6] (1891)], the location and character of the way, as well as the kind of traffic it bears, should be considered in determining the degree of care required. *Larrea v. Ozark Water Ski Thrill Show, Inc.,* 562 S.W.2d 790, 793[4] (Mo.App.1978); 63 C.J.S. Municipal Corporations § 803, at p. 122. Likewise, the care expected of a municipality to keep miles of sidewalks in a reasonably safe condition most certainly varies in degree to the care expected of a possessor to keep a 13-foot sidewalk in a reasonably safe condition.

It has many times been observed that the amount of a depression or elevation existing in a sidewalk is not the lone factor to be considered in deciding whether there was or was not actionable negligence. In this case the sidewalk was located on property where good walkways could reasonably be expected. The expansion joint where the defect existed was filled with a dark asphalt substance which could have served to disguise the defect to the cursory eye. The south 9 feet 4 inches (approximately) of the slab was bathed in bright sunlight, whereas a pedestrian's last two steps (approximately) to reach the defect would have transported him from sunlight into shadow. The defect was at or within a step or so of the entranceways into the building and at a place where one could normally be expected to be looking at the doorways in preparation of gaining entrance into the structure. Was the defect, colored in black and cast in shadow, plainly visible or somewhat obscured? Was the defect, in relation to the entranceways, something that people should be observing with unerring concentration, or was it a defect, under all the existing circumstances, that could reasonably have been overlooked? *Fischer v. Kansas City,* 446 S.W.2d 451, 454[2] (Mo.App.1969). In our opinion the evidence does not show absence of actionable negligence as a matter of law. It is our belief the issue was one for the jury and that it was not error for the trial court to refuse direction of a verdict for the defendant.

Defendant's second point relied on complains of the refusal of the trial court to give its proffered instruction regarding Bennie's pleaded contributory negligence for failure to keep a careful lookout.

The two verdict directing instructions given for plaintiffs (with the bracketed portions showing the differences in the wife's charge) read: "Your verdict must be for plaintiff Bennie Wyatt [Beverly Wyatt] if you believe: First, there was a defect in the sidewalk in front of defendant's building, and as a result the sidewalk was not reasonably safe for business invitees, and Second, plaintiff Bennie Wyatt did not know and by using ordinary care could not have known of this condition, and Third, defendant knew or by using ordinary care could have known of this condition, and Fourth, defendant failed to use ordinary care to remedy it or warn of it, and Fifth, as a direct result of such failure, plaintiff Bennie

Wyatt was injured [and as a direct result of such injury plaintiff Beverly Wyatt sustained damage]. MAI 22.03 Modified."

The refused instruction tendered by defendant reads: "Your verdict must be for the defendant . . . as to the claims for damages of plaintiffs . . . if you believe: First, plaintiff Bennie D. Wyatt failed to keep a careful lookout; and Second, plaintiff Bennie D. Wyatt was thereby negligent; and Third, such negligence of said plaintiff directly caused or directly contributed to cause any damage plaintiffs may have sustained. The term 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances. MAI 32.01, 11.02, 35.01(2) Modified." [1]

■■■ In deciding the propriety of refusing the foregoing instruction offered by defendant, we bear in mind that the evidence is to be considered in the light most favorable to defendant. *Rickman v. Sauerwein,* 470 S.W.2d 487, 489[1] (Mo.1971). While Bennie's testimony was a self-serving attestation of a careful lookout on his part, a jury has leave to believe all, part or none of the testimony of any witness and may accept or reject it in whole or in part as it finds it to be true or false when considered in relation to the other testimony, facts and circumstances. *Robertson v. Grotheer,* 521 S.W.2d 452, 457[5] (Mo.App.1975). Also, if the evidence supports it, a defendant has the right to an instruction affirmatively based upon its theory that plaintiff failed to keep a careful lookout. *Moore v. Parks,* 458 S.W.2d 344, 349[9] (Mo.1970).

Without a recasting of the entire evidence, it seems clear that whether Bennie was maintaining a careful lookout was a matter concerning which reasonable minds could differ as attested by the unanimous jury verdict for defendant in the first trial

of this case. *Wyatt v. Southwestern Bell Telephone Company,* supra, 514 S.W.2d 366. Whether Bennie, under the existing circumstances and facts, by maintaining a careful lookout could have seen and avoided the sidewalk defect in his short walk of 13 feet in reaching it was an issue for the jury to decide. Also, whether Bennie's having looked at the envelope and thus obliterated his vision of the sidewalk rendered him negligent by reason of a failure to keep a careful lookout, was likewise for jury determination.

■■■ Provided the subject is not fittingly, completely and properly covered by other instructions given for plaintiff or defendant, a defendant has the right to have its defense fully, clearly and affirmatively presented to the jury in an instruction of the court. *Northam v. United Rys. Co. of St. Louis,* 176 S.W. 227, 229 (Mo.1915); *Derr v. St. Louis Public Service Company,* 399 S.W.2d 241, 242[1] (Mo.App.1966); *Anderson v. Welty,* 334 S.W.2d 132, 139[14] (Mo.App.1960) and cases cited in n. 11; *Shaw v. East St. Louis Ry. Co.,* 55 S.W.2d 497–498[1] (Mo.App.1932). Although plaintiffs' instructions in this case referred to the matter that Bennie did not know or by the use of ordinary care could not have known of a defect in the sidewalk, this did not squarely and clearly submit to the jury defendant's theory that Bennie failed to keep a careful lookout [*Da Pron v. Neu,* 43 S.W.2d 915, 917[4] (Mo.App.1931); *Sullivan v. Chauvenet,* 186 S.W. 1090, 1093[4] (Mo.App.1916); *Derrington v. City of Poplar Bluff,* 186 S.W. 561, 563–564[5] (Mo.App.1916); *Stephens v. City of El Dorado Springs,* 185 Mo.App. 464, 471, 171 S.W. 657, 660[6] (1914)]; and the refusal of defendant's instruction was reversible error. *Harris v. Terminal R. Ass'n of St. Louis,* 203 Mo.App. 324, 333–334, 218 S.W. 686, 688[7] (1920).

1. The form of defendant's offered but refused instruction is not questioned. See: *Helfrick v. Taylor,* 440 S.W.2d 940, 943–944[4] (Mo.1969) and *Shackman v. Lincoln Property Co.,* 556 S.W.2d 50, 52–53 (Mo.App.1977), tenant versus landlord; *Rickman v. Sauerwein,* 470 S.W.2d 487, 489–490[3–4] (Mo.1971), pedestrian versus motorist; *Fehlbaum v. Newhouse Broadcasting Corporation,* 483 S.W.2d 664, 666[4] (Mo.App.1972) and *Demko v. H&H Investment Company,* 527 S.W.2d 382, 388, n. 4 (Mo.App.1975), fall by business invitee.

The judgment nisi is reversed and the cause remanded for a new trial.

All concur.