James William JOHNSTON, et al., Plaintiffs-Appellants,

v.

ALLIS–CHALMERS CORPORATION, et al., Defendants-Respondents.

No. 52204.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 4, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 2, 1987.

Application to Transfer Denied Oct. 13, 1987.

Louis J. Leonatti, Mexico, for plaintiffs-appellants.

David A. Oliver, Columbia, Rollin J. Moerschel, St. Charles, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

Appellants, plaintiffs below, James William and Mary E. Johnston appeal from a verdict for respondents, defendants below, the Allis-Chalmers Corporation and the Donahue Corporation on James Johnston's claim for personal injuries which left him partially disabled and on Mary Johnston's claim for loss of consortium. Mary also appeals from the trial court's grant of a directed verdict for respondents on her claim for her own injuries. Appellants' claims arose from an accident in rural Monroe County in which a trailer manufactured by the Donahue Corporation and distributed by the Allis-Chalmers Corporation as a farm implement carrier came loose from the pickup truck pulling it and careened into the Johnstons' car after hitting another vehicle. Appellants' claims were founded on a strict liability theory. They alleged that the trailer was defective and unreasonably dangerous in that it was not equipped with safety chains for use in attaching it to a car or truck.[1]

Appellants contend that the trial court erred in giving instructions number 14 and

---

1. The Johnstons settled out of court with the driver of the truck from which the trailer came loose on their negligence action.

16, because a defendant is limited to a single converse instruction where multiple plaintiffs submit verdict directors based on one theory of recovery, and said instructions amounted to allowing both respondents two converse instructions against the appellants' theory of recovery. Instructions number 14 and 16 were both included in the package of instructions addressed to Mary Johnston's loss of consortium claim. Instruction number 14 states: "In your verdict on the claim of Mary E. Johnston you must not assess a percentage of fault to defendant Allis-Chalmers unless you believe defendant Allis-Chalmers distributed the trailer in a defective condition unreasonably dangerous." Instruction number 16 read: "In your verdict on the claim of Mary E. Johnston you must not assess a percentage of fault to defendant Donahue Corporation unless you believe defendant Donahue Corporation manufactured the trailer in a defective condition unreasonably dangerous."

At the time when instructions 14 and 16 were given in the package of instructions to be used in deciding Mary's loss of consortium claim, instructions 8 and 10 had already been given in the package of instructions to be used in deciding her husband, James', claim. Instructions number 8 and 10 were identical to instructions 14 and 16 respectively except that the beginning phrase in both 8 and 10 read, "[i]n your verdict on the claim of James W. Johnston...."

■ Appellants contend that, even though they both submitted their claims on the same theory of liability, each defendant was allowed to converse that theory twice thus overemphasizing the "defense" in the minds of the jurors. We note first that respondents' converse instructions were not affirmative converses asserting defenses. They were negative converses directed to an element of appellants' causes of action, and therefore there was no "defense" to be overemphasized.

Appellants cite *Cragin v. Lobbey,* 537 S.W.2d 193, 196 (Mo.App.1976), *Wyatt v.*

*Southwestern Bell Telephone Company,* 514 S.W.2d 366 (Mo.App.1974), and M.A.I. 33.01 for the proposition that while each defendant is entitled to a separate converse with respect to each asserted theory of liability, where both a claim for personal injury damages and a derivative claim for loss of consortium are asserted, the only allowable converse instruction with respect to the consortium claim is one directed to the consortium claim plaintiffs' separate damage element. However, both *Cragin* and *Wyatt,* as well as preceding cases which stood for the same proposition such as *Joggerst v. O'Toole,* 513 S.W.2d 722 (Mo.App.1974), were decided prior to the Supreme Court's modification of M.A.I. in 1980 to mandate the packaging of instructions where there is more than one claim involved in a particular cause, M.A.I. 2.05 and *See* M.A.I. 2.00 General Comment B.[2]

Instruction number six and twelve were patterned on M.A.I. 2.05. Instruction number six read: "Instructions 6 through 11 and general instructions 1 through 5 apply to the claim of James W. Johnston for personal injury. Use verdict form A to return your verdict on this claim." Instruction number 12 read: "Instructions 12 through 17 and general instruction 1 through 5 apply to the claim of plaintiff Mary E. Johnston for damages as a result of any injury to her husband James W. Johnston. Use verdict B to return your verdict on this claim."

The packaging requirement means that except for the general instructions given in all civil cases, *all* the instructions needed to resolve a particular claim are to be packaged together, so that each package is in fact a separate unit. M.A.I. 2.05, submitted in the case *sub judice* as instructions number 6 and 12, instructed the jury to apply only the instructions in the particular package and the general instructions to arrive at the verdict on that package and there is no provision for adding the converse or converses to the instructions in the general instruction package. There is no instruction stating that if the verdict is

---

**2.** We have also examined M.A.I. 33.01, but other than in the notes of cases which follow it, we find nothing in it which supports appellants' position.

not for the plaintiff who was directly injured, there can be no verdict for his spouse on the consortium claim. To the jurors the packages are completely separate and we therefore hold that a defendant is allowed to converse any or all elements of each plaintiff's verdict director in the package directed to that plaintiff's claim.

The old rule was based on the fact that a defendant could address *one* converse to the claims of *all* the plaintiffs asserting claims against him on a particular theory of liability. Therefore, allowing separate converses was held to be overkill. However, M.A.I. 2.05 changed the situation by withdrawing from defendants the opportunity to converse the verdict directors of multiple plaintiffs with one converse instruction. Each plaintiff's claim and the directions applying to his claim are now separate and therefore, the rationale of *Cragin* and *Wyatt* is no longer applicable as the trial court properly found.

■ Additionally, we also note since *Fowler v. Park Corporation*, 673 S.W.2d 749, 755–56 (Mo. banc 1984) and its progeny, instructional error is no longer an automatic ground for reversal, as it was when the *Wyatt* and *Cragin* cases were decided. Instructional error stands as a ground for reversal only where the record on appeal indicates substantial prejudice. *Fowler*, *supra* at 757 and see also *Grady v. American Optical Corporation*, 702 S.W.2d 911, 920 (Mo.App.1985). If Instructions 14 and 16 were considered overkill, they were not incorrect statements of law, and no substantial prejudice appears from the record.

■ Appellants also contend that Instructions number 14 and 16 were prejudicial because the instructions did not refer to Mary Johnston's claim "for loss of consortium," but only to the "claim of Mary E. Johnston." They contend that this fact confused the jury, but they did not indicate in their brief wherein and why this confusion occurred. Instruction number 12, cited earlier, was the first instruction in the package relating to the loss of consortium claim. It specifically provided that the instructions in that package applied "to the

claim of Mary E. Johnston for damages as a result of any injury to her husband James W. Johnston." Both the verdict director against defendant-respondent Allis-Chalmers and the verdict director against defendant-respondent Donahue Corporation began: "Your verdict must be for plaintiff Mary E. Johnston on her claim for damages as a result of any injury to her husband...." We find no possibility of confusion or prejudice to appellants due to the wording of defendants' converses.

We find no error with respect to the giving of Instructions number 14 and 16.

We next address appellant Mary E. Johnston's contention that the trial court erred in directing a verdict against her on her claim for damages arising from the injuries she sustained in the accident. The basis for the trial court's decision to direct out Mary's independent claim was that she failed to present medical evidence to establish a connection between the accident and the headaches and pressure on her back and neck that constituted her alleged injuries.

■ In reviewing a directed verdict against a plaintiff:

the evidence must be considered in a light most favorable to the plaintiff accepting as true that which is not opposed to physical laws or not entirely unreasonable. Plaintiff is to be accorded all favorable inferences, and all unfavorable inferences are to be rejected. The defendant's evidence is to be rejected except where it aids the plaintiff's case. The plaintiff, however, bears the burden to remove his case from mere conjecture and to establish his case by substantial evidence ... or by reasonable inferences which can be drawn from his evidence [if he is to withstand a motion for directed verdict].

*Gordon v. Oidtman*, 692 S.W.2d 349, 352 (Mo.App.1985).

Mary testified that after the accident she began having severe headaches and "pressure in the back of my neck down the right shoulder." When asked about when she began having these problems, she stated,

"I don't remember if it was immediately or like later on that day or the next." She also testified that she had no history of similar types of problems. Her husband had medical testimony connecting his injuries to the accident, but Mary did not present any such evidence on her claim, though she indicated that she did see a doctor two or three days after the accident.

The court below correctly noted, and respondents note here that unless pain or an injury has a sudden onset or unless there is other evidence that would allow jurors to draw the conclusion that the injury or pain arose from the accident without resorting to pure speculation, medical evidence is required. Where plaintiff has testified to pain arising from an incident which began weeks or months after the incident or where plaintiff has not sought medical help for the injuries or pain until weeks or months after the incident, medical testimony has been held to be required. *See Almon v. Black,* 611 S.W.2d 368, 370 (Mo.App.1981); *De Moulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.App.1969); and *Moore v. Glasgow,* 366 S.W.2d 475, 483 (Mo.App. 1963). Medical testimony is also required where the injury arises from emotional harm, *Harrison v. Weller,* 423 S.W.2d 226, 230 (Mo.App.1967) or where the injury is of a type that would not normally arise from the incident such as a hernia arising from an automobile collision, *Bertram v. Wunning,* 385 S.W.2d 803, 806 (Mo.App.1965).

The case, however, most similar to the case at bar is *Pruneau v. Smiljanich,* 585 S.W.2d 252, 255–256 (Mo.App.1979). There the plaintiff began experiencing pain three or four days after an automobile accident. There, as in the case *sub judice,* there was no evidence that this pain stemmed from a preexisting condition or intervening cause. This court noted these facts and found that the plaintiff had made a submissible case, and we so hold with regard to Mary Johnston's claim. There was enough evidence from the surrounding circumstances and the lack of a prior medical history of similar pains to make Mary's claim submissible. The trial court therefore erred in granting a directed verdict.

This conclusion would generally lead this court to reverse and remand Mary Johnston's independent claim for a new trial. However, a new trial is only required because of the erroneous entry of a directed verdict where the error is prejudicial. *See, Ransom v. Adams Dairy Company,* 684 S.W.2d 915, 920–921 (Mo. App.1985). Mary Johnston was trying her separate claim to the same jury which decided her own loss of consortium claim and her husband's claim, and she was trying it under the same theory, *i.e.,* that the trailer was defective and unreasonably dangerous because of its lack of safety chains when it was manufactured by the Donahue Corporation and distributed by Allis-Chalmers. The jury after considering the evidence found that the trailer was not defective. In verdict "A" relating to the claim of James and verdict "B" relating to the derivative claim of Mary, the jury found each defendant's percentage of fault to be "0".[3]

The finding of no fault in making the trailer unreasonably dangerous would have foreclosed any right to relief from either company by Mary, as well as by John, had her independent claim reached the jury, as it properly should have.

We note that the principles of collateral estoppel and *res judicata* preclude relitigation of issues and causes of action which have already been litigated. *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The preclusive effect of the two may be applied not only to the parties to a claim on which judgment has been entered, but also to persons in privity with them. *Nelson v. Missouri Division of Family Services,* 688 S.W.2d 28, 30 (Mo.App.1985).

"The doctrine [*res judicata*] is applicable if (as here) the interests of the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in

---

**3.** Comparative fault does not apply in a strict products liability case. *Lippard v. Houdaille*

*Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986). This matter was tried prior to *Lippard.*

each and if there can be no adversity of interest between them." *Drainage District No. 1 Reformed v. Matthews,* 234 S.W.2d 567, 574 (Mo.1950), cited in *Hixson v. Kansas City,* 239 S.W.2d 341, 343 (Mo. banc 1951).

"Generally speaking, privies are those legally represented at trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment. *Drainage District v. Mathews, Id.,* cited in *Hixson,* 239 S.W.2d at 344. In other words, "[p]ersons are in privity for *res judicata* [and collateral estoppel] purposes when the interests of the nonparty are so closely related to the interests of the party, that the nonparty can fairly be considered to have had his day in court." *Gribben v. Lucky Star Ranch Corp.,* 623 F.Supp. 952, 960 (W.D.Mo.1985), citing *In re Gottheiner,* 703 F.2d 1136, 1139 (9th Cir.1983).

We recognize that Mary Johnston's loss of consortium claim was a derivative claim resulting from her husband's alleged injuries. Yet the decisive liability issue, i.e., the alleged defect, was the identical issue in her claim for injuries, her husband's claim and her derivative claim for loss of consortium. That issue was submitted, as aforementioned, in six instructions. She could hardly be considered a nonparty to this cause or to its subject matter. She was represented by the same attorney as her husband and the attorney vigorously pursued the liability issue throughout the entire litigation and trial. Mary Johnston cannot now claim she did not have her day in court.

"In the instant circumstances under the applicable principles and the broad policy of the law to bring litigation to an end, the *res judicata* rule should apply." *Drainage Dist. No. 1 Reformed v. Matthews, supra* p. 574. We agree.

Truly she was a party, albeit, a derivative party, but she shared a common interest in the outcome of the lawsuit. Or to put it in another manner she was not a stranger to the law suit and her theory of liability was adjudicated and, we believe, finally. We conclude that the trial court erred in not allowing Mary Johnston to testify as to her injuries but we find that such error was not prejudicial.

The judgment is affirmed.

CRANDALL and KAROHL, JJ., concur.